IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SOLOTHAL THOMAS, | * | |
| Petitioner, | * | |
| v. | * | |
| | | Crim. No. CCB-04-232 |
| UNITED STATES OF AMERICA, | * | Civ. No. CCB-16-2494 |
| Respondent. | * | |

MEMORANDUM

Solothal Thomas filed a motion to vacate, set aside, or correct sentence his sentence pursuant to 28 U.S.C. § 2255. The government concedes that under *United States v. Davis*, 588 U.S. 445 (2019), three of Mr. Thomas's five counts of conviction should be vacated. The parties disagree about the proper remedy. No oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the court will grant Mr. Thomas's § 2255 petition, vacate his sentence and his convictions under Counts Four, Five, and Six, and reimpose the concurrent terms of life imprisonment on Counts Two and Three.[1]

I.  **Background**

In 2004, Mr. Thomas was indicted on six charges related to a murder for hire conspiracy, where Mr. Thomas and a co-defendant, Eduado Countess, shot and killed a man named Jesse Williams. The two were hired by Tyree Stewart, a successful drug trafficker in Baltimore City. Stewart was upset at Williams, who, along with two other men, allegedly robbed his mother's home. Stewart hired Countess and Mr. Thomas to kill Williams, and they did so on October 2, 2001. Countess shot Williams first and Mr. Thomas, not satisfied that Williams was dead, fired

---

[1] The court is aware that Mr. Thomas also has a motion for compassionate release pending, ECF 371. That motion will be decided separately.

at least nine rounds into Williams, who died at the scene. In 2006, a jury convicted Mr. Thomas of one count of conspiracy to possess a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o) (Count Four), one count of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count Five), one count of possessing a firearm in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. § 924(j) (Count Six), one count of conspiracy to use interstate commerce facilities in commission of murder-for-hire in violation of § 1958(a) (Count Two), and one count of using interstate commerce facilities in commission of a murder-for-hire also in violation of 18 U.S.C. § 1958(a) (Count Three). The court sentenced Mr. Thomas to concurrent terms of life imprisonment on Counts Two, Three, and Six, a concurrent term of 240 months imprisonment on Count Four, and a consecutive sentence of 120 months imprisonment on Count Five. ECF 230. It also sentenced Mr. Thomas to concurrent terms of supervised release. *Id.* The Fourth Circuit affirmed Mr. Thomas's convictions and sentence on direct appeal. *United States v. Thomas*, 282 F. App'x 244, 246 (4th Cir. 2008) (per curiam).

Mr. Thomas filed a timely motion to vacate under § 2255, alleging ineffective assistance of counsel. *United States v. Thomas*, Civil No. CCB-09-2461, 2013 WL 331337 (D. Md. Jan. 28, 2013). The court denied that motion, *id.* at *2, and the Fourth Circuit affirmed that denial, *United States v. Thomas*, 531 F. App'x 289, 290 (4th Cir. 2013) (per curiam).

Mr. Thomas then filed the instant motion to vacate under § 2255, to correct what he argued was an illegal sentence. ECF 327, ECF 328. While this motion was pending, the Supreme Court decided *United States v. Davis*, 588 U.S. 445 (2019). *Davis* held that the residual clause of 18 U.S.C. § 924(c) is unconstitutionally vague. Under *Davis*'s new rule, an offense is a crime of violence only if it "has as an element the use, attempted use, or threated use of physical force

against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Because a conspiracy offense "does not invariably require the actual, attempted, or threatened use of physical force," the Fourth Circuit held in 2019 that conspiracy to commit robbery under the Hobbs Act does not categorically qualify as a crime of violence. *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (en banc).

Represented by counsel, Mr. Thomas later moved to supplement his § 2255 petition, asserting that his convictions on Counts Four, Five, and Six were invalid under *Davis*. ECF 344-1, at 1–2. As he explains, the crime of violence charged in those counts was a conspiracy to commit murder for hire, and a conspiracy offense is not a crime of violence. The government concedes that Mr. Thomas's convictions on Counts Four, Five, and Six are no longer valid and that Mr. Thomas is entitled to vacatur of those convictions. ECF 366, at 1, 3.

The parties disagree as to the proper remedy. They agree that Mr. Thomas's sentence should be vacated. As for the remaining counts, Counts Two and Three, Mr. Thomas argues that this court is without authority to reimpose the concurrent life sentences. That's because, he says, those sentences violate the *Apprendi* doctrine, and the court is "without authority" to reimpose them. Instead, the court may impose a sentence only up to ten years per count. The government does not discuss the *Apprendi* issue but asks that the court simply reimpose the concurrent life sentences without conducting a full resentencing.

## II.     Motion to Vacate Sentence

### A. Standard of Review

To be eligible for relief under § 2255, the petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

3

sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). The Fourth Circuit has recognized that *Davis* applies retroactively on collateral review. *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021).

    B. Analysis

        1. **Crime of Violence**

The court agrees with Mr. Thomas and the government that Mr. Thomas's convictions on Counts Four, Five, and Six can no longer stand after *Davis* and *Simms*. Counts Four and Five alleged that Mr. Thomas conspired to possess firearms and actually possessed firearms in furtherance of a drug-trafficking crime and crime of violence—either the conspiracy to commit murder for hire or the actual murder for hire. ECF 344-2, at 8–11. Count Six alleged that Mr. Thomas caused the death of a person using a firearm, in the course of committing a drug-trafficking crime and crime of violence. *Id.* at 12. The jury did not specify whether it relied on the murder for hire or the conspiracy to commit murder for hire as the predicate crime of violence. His convictions may stand only if both predicates—murder for hire *and* conspiracy to commit murder for hire—are crimes of violence. *See United States v. Runyon*, 994 F.3d 192, 201 (4th Cir. 2021).

The court agrees with the parties that the conspiracy to commit murder for hire, without the enhancement for causation of personal injury or death, is categorically not a crime of violence. Though the Fourth Circuit later clarified that a conviction for conspiracy to commit murder for hire may be a crime of violence if a jury finds that death results from the offense, *Runyon*, 994 F.3d at 203, the jury made no such finding here. Indeed, the court instructed the jury that "[t]he government [did] not have to prove that the murder was actually committed or even that it was attempted." ECF 344-3, at 28. Thus, the court must vacate Mr. Thomas's

convictions on Counts Four, Five, and Six, because the indictment did not adequately allege a predicate crime of violence.

## 2. Remedy

The court turns now to the proper remedy. The government requests that the court use its discretion to simply correct Mr. Thomas's sentence by vacating the sentence and reimposing the concurrent life sentences on Counts Two and Three. Mr. Thomas seeks a full resentencing. In the alternative, however, he argues that because the two life sentences were imposed in violation of the *Apprendi* doctrine, the court may not reimpose them even if it elects to forego a full resentencing.

At the outset, the court notes that Mr. Thomas may have waived his *Apprendi* argument by failing to raise it until his reply brief. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)); *see also Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995) (explaining that "courts generally will not address new arguments raised in a reply brief because it would be unfair to the [other party] and would risk an improvident or ill-advised opinion on the legal issues raised") (alteration added).

Still, the court has discretion to excuse the waiver. *De Simone v. VSL Pharmaceuticals, Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("A district court may consider an argument raised for the first time on reply under appropriate circumstances."); *Clawson*, 451 F. Supp. 2d at 734 ("However, the power to decline consideration of [waived] arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances."). The government has had ample time to seek leave to file a sur-reply brief but has chosen not to. *See*

*De Simone*, 36 F.4th at 532 (finding district court did not abuse its discretion in considering argument raised for the first time in reply brief when ten months elapsed between reply brief and district court order, and the defendants did not pursue a sur-reply). The court will use its discretion to address Mr. Thomas's argument.

Under § 2255, if the district court finds that the petitioner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Thus, "the end result of a successful § 2255 proceeding must be the vacatur of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence." *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007) (internal footnotes omitted).

Section 2255 "confers a 'broad and flexible' power to the district courts 'to fashion an appropriate remedy.'" *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)) (quoting *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992)); *see also Hadden*, 475 F.3d at 669 ("The district court has 'broad and flexible power' under § 2255 to determine the nature and scope of the remedial proceedings in the first instance." (quoting *Hillary*, 106 F.3d at 1171)). Though the statute authorizes a district court to conduct a full resentencing, it does not require one. *Hadden*, 475 F.3d at 668. Instead, a district court may *either* correct the petitioner's original sentence *or* resentence him. *Id.* at 667.

A full resentencing differs from a sentence correction. *Id.* While a resentencing requires certain procedural protections (the defendant must be allowed to allocate, the probation office must prepare a new presentencing report, and the district court reopens the record for new

evidence and argument), a district court may *correct* the sentence by simply striking the sentence on the vacated count and re-entering the rest of the sentence without following any of the resentencing procedure. *Id.*; *see also United States v. Chaney*, 911 F.3d 222, 225–26 (4th Cir. 2018) (affirming district court's decision to correct sentence instead of conducting a full resentencing); *United States v. Davis*, 708 F. App'x 767, 769 (4th Cir. 2017) (per curiam) (same).

### A. Resentencing

Mr. Thomas asks first for a full resentencing. He highlights the sentencing package doctrine, which "provides that in appropriate circumstances resentencing on all counts is a proper remedy under § 2255 for a single unlawful conviction." *Chaney*, 911 F.3d at 226. That doctrine emphasizes that district courts take a "holistic approach" when fashioning a sentence on multiple counts. *United States v. Richardson*, 96 F.4th 659, 665 (4th Cir. 2024). As the Fourth Circuit recently explained, "Because reviewing courts recognize there is a 'strong likelihood' a district court crafts sentences on various counts as an 'overall plan,' the district court should 'review the efficacy of what remains in light of the original plan.'" *Id.* (quoting *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017)).

However, the sentencing package doctrine does not mandate a full resentencing in every case. And "nothing in the sentence-package theory forbids the district courts from doing what the text of § 2255 clearly permits: 'correcting' a prisoner's unlawful sentence without conducting a formal 'resentencing.'" *Hadden*, 475 F.3d at 669 (brackets omitted) (quoting 28 U.S.C. § 2255(g)).

A sentence correction, rather than a full resentencing, is the most appropriate remedy. That is true, even though there was an *Apprendi* error at Mr. Thomas's sentencing. Mr. Thomas's

sole remaining convictions are both for violations of 18 U.S.C. § 1958(a), which requires a mandatory sentence of death or life imprisonment if death results from the offense. Without the "death results" enhancement, the statutory maximum for the offense is ten years, or twenty years if "personal injury results." Because the "death results" enhancement increases the possible penalty, under the *Apprendi* doctrine, a jury should have found that death resulted for the court to impose life sentences on both counts. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Burrage v. United States*, 571 U.S. 204, 210 (2014) (concluding while interpreting an unrelated statute that "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt"); *Runyon*, 994 F.3d at 202 ("Because § 1958(a) imposes distinct enhanced penalties in circumstances where 'personal injury results' or where 'death results,' those are alternative elements for conviction that must be proven to the jury beyond a reasonable doubt under *Apprendi*."). The jury did not make such a finding. The court considers whether the *Apprendi* error justifies a full resentencing.

The Second Circuit's logic in *United States v. Peña*, 58 F.4th 613 (2d Cir. 2023), is compelling. Like Mr. Thomas, the defendant in that case, Jose Peña, was convicted of five counts stemming from another murder for hire—three counts under § 1958(a), and two counts of using a firearm to commit murder, in relation to a crime of violence, under § 924(j). *Id.* at 616. He was sentenced to five concurrent terms of life imprisonment, one for each count. *Id.* Also like Mr. Thomas, Peña later moved to vacate his convictions on the § 924(j) counts under *Davis*, since the predicate offense—conspiracy to commit murder for hire—was no longer a crime of

8

violence. *Id.* at 617. The government consented to vacatur of the two § 924(j) counts. *Id.* The district court declined to conduct a full resentencing, and instead amended the judgment to reflect concurrent life sentences on the remaining three counts. *Id.*

Peña moved for reconsideration, arguing that because the jury never found that death resulted for the § 1958(a) convictions, the district court should have conducted a full resentencing. *Id.* He also argued that, under *Apprendi*, the district court could have sentenced him to only ten years of imprisonment on each of those counts. *Id.* at 617–18. The district court disagreed, finding that because § 924(j) requires the defendant to "cause the death of a person through the use of a firearm," the jury necessarily found that death resulted for purposes of the § 1958(a) counts. *Id.* at 618.

The Second Circuit affirmed. Though it found that the district court committed an *Apprendi* error, it found that Peña procedurally defaulted on his *Apprendi* claim. *Id.* at 620. Peña could have challenged the district court's erroneous jury instructions before the verdict, after trial, or on direct appeal, but did not do so. *Id.* Peña claimed that the Second Circuit misconstrued his argument, because he was not raising a standalone *Apprendi* claim (warranting § 2255 relief in its own right); rather, he claimed that the *Apprendi* error justified a full resentencing. *Id.* at 621. The Second Circuit held that the doctrine of procedural default nevertheless barred his argument. *Id.* In its words, "[a] district court's decision to deny a defendant's request for resentencing in the § 2255 context does not empower a defendant to raise otherwise procedurally defaulted arguments against the merits of the defendant's convictions and sentence." *Id.*

In the alternative, the Second Circuit found that the *Apprendi* error was harmless. *Id.* There was overwhelming evidence that death resulted from Peña's conduct, and though his

9

convictions under § 924(j) were no longer valid, "[t]he jury could not have returned this verdict without finding that Pena's conduct resulted in death." *Id.* at 622. Thus, the district court did not abuse its discretion by declining to resentence Peña de novo. *Id.* at 623.

The court agrees with both conclusions: any *Apprendi* error Mr. Thomas could raise is both procedurally defaulted and harmless.[2] Mr. Thomas concedes that he did not raise the *Apprendi* issue either at his original sentencing or on direct appeal. ECF 369, at 5. And as in *Peña*, the jury necessarily had to find that death resulted from Mr. Thomas's possession of a firearm to convict him on the now vacated § 924(j) count, Count Six. Plus, the evidence of Mr. Thomas's involvement in the death of Jesse Williams was overwhelming. Any *Apprendi* error at Mr. Thomas's original sentencing was harmless. *See United States v. Smith*, 723 F.3d 510, 516 (4th Cir. 2013) (holding that harmless error review applies to § 2255 cases). Considering that Counts Two and Three require a mandatory minimum of life imprisonment, any resentencing would be unnecessary and ministerial.

### B. Sentence Correction

In the alternative, Mr. Thomas argues that even if the court chooses to simply correct his sentence, the court lacks authority to reimpose the concurrent life sentences because of the *Apprendi* errors. He cites *United States v. Bethea*, 841 F. App'x 544 (4th Cir. 2021), in support.

In *Bethea*, the district court vacated and reimposed its judgment to allow the petitioner to file a direct appeal, after the petitioner filed a petition under § 2255. *Id.* at 545. The district

---

[2] While the Second Circuit does not bind this court, another district court within the Fourth Circuit has relied on *Peña* in similar circumstances, and likewise found that any *Apprendi* error resulting from the jury's failure to find that death resulted would be harmless. *See United States v. Plunkett*, No. 4:04-cr-70083, 2024 WL 4173806, at *8–9 (W.D. Va. Sept. 12, 2024) (finding that even if *Apprendi* error was properly raised, the error was harmless beyond a reasonable doubt, given the overwhelming evidence that death resulted and the jury's verdict on the vacated § 924(j) count, and declining to correct the error).

court's reimposed sentence violated the First Step Act, which Congress enacted after the district court originally sentenced the petitioner. *Id.* at 556. The Fourth Circuit held that the reimposed sentence was unlawful, even though the First Step Act was not retroactive. *Id.* It found that "the district court's vacatur and reentry of judgment nullified [petitioner's] original sentence." *Id.* at 550. As the court noted, "[a] corrected sentence 'is an entirely new sentence.'" *Id.* (quoting *Hadden*, 475 F.3d at 664). Because the petitioner's original sentence was no more than a "legal nullity," *id.* at 551, the First Step Act applied to the newly imposed sentence. *Id.* at 555. Thus, "the district court was without authority to impose a sentence of life imprisonment without release." *Id.* The Fourth Circuit vacated the sentence and remanded for further consideration. *Id.* at 556.

Aside from being unpublished, *Bethea* is distinguishable. The petitioner could not have raised the First Step Act in 2015 when he was originally sentenced; it did not exist yet. Here, the Supreme Court decided *Apprendi* in 2000, six years before Thomas was originally sentenced. *Bethea* does not discuss procedural default or harmless error—both of which are fatal to Mr. Thomas's claim.

Second, *Bethea* should be limited to the First Step Act context. The Fourth Circuit stressed that its holding in *Bethea* is "a narrow one." *Id.* at 556. The court relied on the language of the First Step Act, as well as Congress's intent that "its new policy determination effectively controls *every* sentence after the date of enactment." *Id.* at 551 (cleaned up). *Bethea* says nothing about its application outside of the First Step Act context, nor does it establish a broad rule that a district court must reconsider the legality of *any* original sentence when correcting a sentence after a grant of relief under § 2255.

The court finds that the proper remedy for Mr. Thomas's § 2255 petition is to vacate his

11

convictions under Counts Four, Five, and Six. The court reimposes concurrent sentences of life imprisonment on Counts Two and Three and concurrent terms of five years of supervised release on those counts. It reduces the special assessment to $200.00.[3]

### III.     Conclusion

For the reasons stated, the court WILL GRANT IN PART AND DENY IN PART Mr. Thomas's motion to vacate under § 2255. A separate order will be entered.

Date:   December 27, 2024                    BY THE COURT:

/S/ CATHERINE C. BLAKE
Catherine C. Blake
United States District Judge

---

[3] An amended judgment will not be issued in this case. An amended judgment will be issued with Mr. Thomas's motion for compassionate release, ECF 371.