IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | |
| | | Crim. No. CCB-04-232 |
| SOLOTHAL THOMAS, | * | |
| Defendant. | * | |

MEMORANDUM

Solothal Thomas is currently serving two concurrent life sentences for his involvement in a murder for hire conspiracy which resulted in the death of Jesse Williams.[1]

Represented by appointed counsel, in 2023 Mr. Thomas filed a motion for compassionate release. (ECF 371). He seeks a sentence reduction based on a combination of factors, including (1) the disparity of the length of his sentence with the average sentence for murder; (2) the disparity of his sentence with his codefendants' sentences; (3) his age; (4) his mental health and repeated suicide attempts; and (5) his rehabilitation. The government has opposed the motion (ECF 383), and Mr. Thomas has replied (ECF 386) No oral argument is necessary. For the reasons that follow, Mr. Thomas's motion will be granted in part and denied in part. His sentences will be reduced to 35 years.

Evaluating a motion for compassionate release involves a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the defendant must show that "extraordinary and compelling reasons" warrant his release. *Id.* (quoting *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022)); 18 U.S.C. § 3582(c)(1)(A)(i)). If that burden is met, the court must then evaluate the sentencing factors set forth in 18 U.S.C. § 3553(a).

---

[1] The court recently denied in part and granted in part Mr. Thomas's motion to vacate under 28 U.S.C. § 2255.

*Centeno-Morales*, 90 F.4th at 279. The burden is on the defendant to show that those factors support release. *Id.*

      I.      Extraordinary and Compelling Reasons

Mr. Thomas raises several factors to show that extraordinary and compelling reasons warrant his release. While none of the factors, standing alone, would justify release, the court finds that in the aggregate, Mr. Thomas has met his burden to show extraordinary and compelling reasons.

First, the disparity between Mr. Thomas's sentence and the average sentence for murder in this district weighs in Mr. Thomas's favor. A sentencing disparity may, in some circumstances, constitute an extraordinary and compelling reason to grant compassionate release. *See United States v. Payton*, PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (granting compassionate release because of sentence reduction of defendant's more culpable coconspirator). Mr. Thomas was convicted of two counts under 18 U.S.C. § 1958(a), murder for hire. Section 1958(a) mandates a sentence of life imprisonment if death results from the murder for hire. The statute imposed a mandatory life sentence when Mr. Thomas was sentenced in 2004, and it continues to impose a mandatory life sentence today. But nothing in § 3582 prevents its application to mandatory life sentences. *See United States v. Johnson*, Case No. 1:97-cr-314-AJT, 2023 WL 5049267, at *15 (E.D. Va. Aug. 8, 2023) ("[W]hile the Government centrally contends that no reduction is appropriate in light of the still applicable mandatory life sentence . . . . Congress did not exempt mandatory life sentences from (a) relief under the original language in § 3582(c)(1)(A)(i) or (b) the modifications to the exhaustion requirements of § 3582(c)(1)(A)."); *see also United States v. Perez*, Crim. No. JBA-02-0007, 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021) ("Although his life sentences are mandatory, the mandatory component does not bar

relief under the First Step Act. . . . Although Mr. Perez was convicted of a most serious offense—procuring the murder of another—the gravity of the offense does not categorically preclude the Court from reducing his sentence.")

And as Mr. Thomas explains, the average sentence for murder is significantly shorter than Mr. Thomas's sentence, both nationwide and within this district. *See* ECF 471 in *United States v. Linton*, No. JKB-98-258, at *5–*8 (D. Md. Sept. 27, 2021) (discussing the disparity between defendant's life sentence for murder in aid of racketeering compared to the average sentence for murder in Maryland in 2021). According to the United States Sentencing Commission, the nationwide mean sentence for murder for fiscal year 2023 was 285 months, and the median sentence was 276 months. *See* United States Sentencing Commission, *Interactive Data Analyzer: Distribution of Sentence Length, Fiscal Year 2023*, U.S. Sent'g Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Dec. 20, 2024). Within this district, the mean sentence for murder for fiscal year 2023 was 310 months, and the median sentence was 300 months. *See id.* Considering that Mr. Thomas was sentenced when he was thirty years old, Mr. Thomas is likely to serve far longer than either mean sentence. This exceptionally long sentence counsels toward relief. *See United States v. Johnson*, No. ELH-99-352, 2023 WL 7130950, at *1, *14 (D. Md. Oct. 27, 2023) (reducing life sentence to 35 years in case involving drug trafficking and murder); *see also* ECF 661 in *United States v. Holland*, No. GLR 96-399 (D. Md. Aug. 18, 2021) (reducing life sentence to 35 years); *Brown v. United States*, No. ELH-00-100, 2020 WL 1248950, at *10 (D. Md. Mar. 16, 2020) (reducing life sentence to 40 years); *United States v. Williams*, No. CCB-07-402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) (reducing life sentence to 30 years).

Second, the disparity between Mr. Thomas's sentence and those of his codefendants is

3

compelling. While Mr. Thomas and his codefendant, Eduado Countess, were both sentenced to mandatory life sentences, the sentences of their other coconspirators were dramatically shorter. Mr. Thomas points to the sentences of his brother, Danta Thomas, and their acquaintance, Linwood Smith. Danta drove Mr. Thomas and Countess to Williams's home, where they shot him. Danta's sentence was 77 months of imprisonment. Smith was supposed to drive Mr. Thomas and Countess to Williams's home that morning, but he overslept. Smith's sentence was 64 months of imprisonment. Unlike Mr. Thomas, they did not pull the trigger and kill Williams directly. They also pleaded guilty. Danta testified for the prosecution at trial. *See Thomas v. United States*, No. CCB-09-2461, 2013 WL 331337, at *1 (D. Md. Jan. 28, 2013) (describing Danta's testimony). Danta and Smith's minor roles in the conspiracy and their acceptance of responsibility justify some sentencing disparity. *See United States v. Morales-Vega*, No. PJM 08-0051, 2021 WL 4864450, at *5 (D. Md. Oct. 19, 2021) (finding disparity between sentences of defendant and codefendants was warranted because she was a "manager or supervisor" within the drug conspiracy, did not accept responsibility early, and possessed a weapon and ammunition, while the codefendants played minor roles, accepted responsibility, and did not possess weapons).

    The court finds that the more apt comparison is to the sentences of Tyree Stewart, who issued the contract for Mr. Williams's murder, and Corey Smith, who brokered the contract and hired Mr. Thomas and Mr. Countess for $10,000. Stewart was sentenced to 83 months of imprisonment, and Smith was sentenced to 97 months. Like Danta and Smith, Stewart and Corey also pleaded guilty. They were also cooperating witnesses. *See Thomas*, 2013 WL 331337, at *1 (describing Stewart and Corey as cooperating witnesses). Still, Mr. Thomas has already served over twenty years of his sentence—more than three times Stewart's sentence. Though some

4

disparity in the sentences is no doubt justified, the disparity between Stewart's 83-month sentence and the life sentence that Mr. Thomas is now serving is disproportionate. Stewart was the mastermind behind the scheme. He planned and directed it. Though Mr. Thomas and Countess executed the scheme, Stewart has similar culpability. The court finds that the sentence disparity weighs toward extraordinary and compelling reasons for release.

Next, the court considers Mr. Thomas's young age when he committed the offense. Mr. Thomas was twenty-five years old when he killed Williams. As one Fourth Circuit judge has explained, "modern research . . . instructs that the prefrontal cortex, the part of the brain that makes it possible to exercise good judgment when presented with difficult life situations, does not finish maturing until age 25." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 476 (4th Cir. 2021), *as amended* (July 15, 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) (Wynn, J., dissenting); *see also* ECF 471 in *Linton*, No. JKB-98-258, at *7 ("[C]ourts have become more cautious about resorting to the 'bluntness of mandatory life sentences' with respect to youthful defendants."). Mr. Thomas was a young adult whose childhood, as explained below, was racked by instability and violence. The court finds his young age is another factor that supports a finding of extraordinary and compelling reasons for release.

Mr. Thomas also relies on his mental health issues, his very difficult childhood, which is well documented in a social worker's report (ECF 371 Ex. O)[2], and his rehabilitation during his term of incarceration. While rehabilitation alone cannot constitute an extraordinary and compelling reason, U.S.S.G. § 1B1.13(d), it may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of

---

[2] That the circumstances of Mr. Thomas's upbringing may have been known at the time of sentencing does not preclude consideration of his abusive childhood in connection with a motion for compassionate release. U.S.S.G. § 1B1.13.

imprisonment is warranted. *See United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) (affirming grants of compassionate release and noting that "each defendant had established exceptional institutional records and taken substantial steps toward rehabilitation").

Mr. Thomas has obtained his GED, completed approximately 1500 hours of additional programming, and started a Stop Bullying program in prison (ECF 371, Exs. E, L, P, Q). Further, Mr. Thomas earned his GED and completed much of this programming before the passage of the First Step Act, when he was serving a mandatory life sentence. In the court's view, this signifies that Mr. Thomas was motivated not by the possibility of early release, but because of his genuine desire for rehabilitation and self-improvement. His last disciplinary infraction was in 2020, and none of his infractions involved violence against others (ECF 371, Exs. N, R). Most of his (limited) infractions are for relatively minor violations, including failure to appear for count or making a three-way phone call. In Mr. Thomas's most severe infraction, possession of a weapon in 2018, Mr. Thomas immediately admitted culpability at his disciplinary hearing (ECF 371, Ex. N). Mr. Thomas has also recognized the evil of his offense and expressed remorse for his commission of Mr. Williams's murder (ECF 371, Ex. O, at 11–12).

Mr. Thomas's rehabilitation is especially impressive considering the extreme hardship he has overcome. Mr. Thomas's mother gave birth to him when she was only five and a half months pregnant. His upbringing was plagued by violence, poverty, and instability. Mr. Thomas grew up in the Murphy Homes, a public housing project where, as Mr. Thomas recounted, he saw people shot in front of him and dead bodies on the ground. That trauma was further compounded by his parents' drug addictions. Mr. Thomas was "subjected [to] repeated domestic violence incidents that took place between his drug-addicted parents when they would openly fight over illicit substances in front of him." (ECF 371, Ex. O, at 4). Both of Mr. Thomas's parents died from

AIDS. Mr. Thomas was often neglected, left without food, and subject to physical abuse. These horrific circumstances of Mr. Thomas's upbringing make his subsequent rehabilitation, maturity, and personal growth even more noteworthy. *See Johnson*, 2023 WL 5049267, at *6 (reducing life sentence in part because of defendant's rehabilitation and noting significance of his rehabilitation in light of his traumatic upbringing).

Finally, the court considers Mr. Thomas's mental health challenges. Mr. Thomas's social work report shares that Mr. Thomas has attempted suicide several times (ECF 371, Ex. O, at 6–7). While the exact nature of his mental health issues is hard to evaluate, given his decision not to seek help from the Bureau of Prisons, those issues will not be entirely discounted. Considering all his circumstances together, the court is satisfied that he has shown an extraordinary and compelling reason for release. And considering Mr. Thomas's rehabilitation, lack of signification disciplinary infractions while incarcerated, and family and community support, the court finds that he is not a danger to the community under 18 U.S.C. § 3142(g).

II.     Section 3553(a) Factors

Demonstrating such a reason, however, does not entitle a defendant to early release. The court must consider the factors under 18 USC 3553(a) and, as noted, the burden is on the defendant to show that the 3553(a) factors support release. Mr. Thomas's crime was extremely serious. He committed a cold-blooded murder for pay, and he had at least one previous serious conviction for assault. The need to reflect the seriousness of the offense, to provide deterrence and just punishment, and to promote respect for the law argue against too great a reduction in his sentence. On the other hand, Mr. Thomas is now 50 years old, with few if any significant infractions on his record. He has the promise of employment and family and community support (ECF 371 Exs. B, C, K, M, S), all of which reduces the risk of recidivism. The court finds that

Mr. Thomas has met his burden to show that the 3553(a) factors support release.

III.     Conclusion

After consideration of all the relevant factors, Mr. Thomas's sentence will be reduced to 35 years. Specifically, his sentences on Counts Two and Three will each be reduced to 420 months, concurrent, followed by concurrent terms of five years of supervised release.

A separate Order follows.


Date:   December 27, 2024                        BY THE COURT:

                                                 /S/ CATHERINE C. BLAKE
                                                 Catherine C. Blake
                                                 United States District Judge